IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 24, 2014 at Knoxville

## ANTHONY BROWN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 09-02479     Lee V. Coffee, Judge**

---

**No. W2013-01611-CCA-R3-PC  -  Filed August 25, 2014**

---

The Petitioner, Anthony Brown, appeals the Shelby County Criminal Court's denial of post-conviction relief from his convictions for possession with intent to deliver cocaine and possession of marijuana and resulting twenty-year sentence. He contends that he received the ineffective assistance of counsel at trial, specifically, that trial counsel failed (1) to cross-examine the State's witnesses regarding trial testimony that was inconsistent with that given at the preliminary hearing and (2) to question witnesses about drug paraphernalia found at the scene, in keeping with his defense strategy. After considering the record and the relevant authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Anthony Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The Petitioner, Anthony Brown, was indicted by a Shelby County grand jury of possession of 0.5 grams or more of cocaine with the intent to deliver, a Class B felony; possession of 0.5 grams or more of cocaine with the intent to sell, a Class B felony; and simple possession of marijuana, a Class A misdemeanor. After a trial, a jury convicted the Petitioner of possession of 0.5 grams or more of cocaine with intent to deliver, a Class B

felony; simple possession of cocaine, a Class A misdemeanor; and simple possession of marijuana, a Class A misdemeanor. The simple possession of cocaine conviction was merged with the delivery of cocaine conviction, and the Petitioner received an effective twenty-year sentence. He appealed to this court, and his convictions were affirmed. See State v. Anthony Brown, No. W2010-01764-CCA-R3-CD, 2012 WL 1154284, at *1 (Tenn. Crim. App. March 30, 2012).

The following factual background was recited in the Petitioner's direct appeal.

At trial, Sergeant Chris Harris of the Shelby County Sheriff's Office testified that on September 11, 2008, he and other law enforcement officers were conducting a narcotics investigation in the area of Rocky Park and Kirby in Memphis, Tennessee. They were looking for Stacy Clark, from whom the officers "had made several undercover buys." As a result of these "buys," Clark was wanted on several felony warrants, and her car was "subject to seizure." Sergeant Harris saw Clark's car drive by him and fail to stop at a stop sign. He began following the car. The car made a U-turn and began traveling toward Sergeant Harris. Harris activated his lights to initiate a stop. He saw [the Petitioner] driving the car. As soon as Sergeant Harris turned on his blue lights, [the Petitioner] "put it in reverse and attempted to flee from [Harris] several hundred feet." [The Petitioner]'s flight ended when he attempted to turn the car around and ran into a curb. Sergeant Harris used his car to block the car from the front, and Detective James Pavatte, who was also involved in the narcotics investigation of Clark, blocked the car from the rear. The officers took [the Petitioner] out of the car, placed him on the ground, and put handcuffs on him.

Detective Pavatte patted [the Petitioner] down and found a brown paper bag in [the Petitioner]'s front left pocket. Inside the paper bag were two plastic bags, one containing crack cocaine and the other containing marijuana. Sergeant Harris testified that the crack cocaine and the plastic bag it was in weighed 3.91 grams. He testified, based on his experience of thirteen years as a law enforcement officer and three years with the narcotics division, that the quantity of cocaine was worth approximately $150. Sergeant Harris also said that this quantity was more than a "one time use amount." The marijuana and its bag weighed 11.1 grams, was worth between $50 and $70, and, according to Harris, was more than the amount a person would use to smoke at one time. Sergeant Harris testified that officers did not find pipes or other drug paraphernalia that a person would use to consume the drugs, either on [the Petitioner] or in the car. Additionally, [the Petitioner] had "somewhere over a

-2-

hundred dollars on him."

On cross-examination, Sergeant Harris acknowledged that [the Petitioner] was not the focus of the officers' investigation that day. He did not know where [the Petitioner] was going or to whom he was going to sell or deliver the drugs.

Detective James Pavatte of the Shelby County Sheriff's Office testified consistently with Sergeant Harris's account of the events of September 11, 2008. He testified that he had been a law enforcement officer for approximately nineteen years and had been involved in narcotics investigations for twelve to thirteen years. He had been involved in undercover operations buying cocaine or crack cocaine "well over a hundred" times. Detective Pavatte testified:

[The drugs] were packaged as though they were being delivered to someone. From my experience, usually . . . you'll find them just loose and the bags will be separate. They'll be in their pocket, but they're usually not in a paper bag or something like that. The paper bag is a way to conceal it [when it's not in the pocket].

Detective Pavatte said that the quantity of crack cocaine would sell on the street for approximately $120 to $180. He said that the quantity, referred to as an "eight ball," was a common weight for distribution.

On cross-examination, Detective Pavatte testified that buyers commonly purchase eight balls, and the buyers, in addition to the seller, also commonly possess an eight ball. He acknowledged that he did not know to whom [the Petitioner] was delivering the narcotics. Detective Pavatte further acknowledged that the drugs were likely to be delivered in the package, and that the buyer might also possess the drugs in the same package after delivery.

Special Agent Melanie Johnson of the Tennessee Bureau of Investigation testified that she analyzed the drugs found on [the Petitioner]. She measured 2.5 grams of crack cocaine and 9.6 grams of marijuana, excluding the bags containing them.

Id. at *1-2.

After this court denied relief on direct appeal, the Petitioner filed a petition for post-

-3-

conviction relief on August 28, 2012. Counsel was appointed, and an amended petition was filed that superceded and replaced the Petitioner's pro se petition. As relevant to this appeal, the following issues were raised in that petition: "Counsel failed to use inconsistencies in the state's affidavit of complaint, as well as the General Sessions preliminary hearing that showed the Petitioner was not in possession of the type and amount of drugs alleged . . . [,] testif[ying] at the preliminary hearing that the Petitioner was found with powder cocaine, but at trial stated it was crack cocaine. . . . The affidavit further stated that drug paraphernalia was found on the Petitioner, but there was no testimony as to this at trial." An evidentiary hearing was held on May 31, 2013, and the following testimony was presented.

The Petitioner testified that, despite his asking trial counsel to provide him with the preliminary hearing transcript multiple times, he never received that transcript. He explained that he needed the preliminary hearing transcript because the witnesses had made inconsistent statements at that hearing and that the transcript would reflect such inconsistencies. The Petitioner further explained that, at trial, one of the police officers changed his testimony, that at the preliminary hearing he said the Petitioner had been found in possession of powder cocaine but that he later testified at trial that the Petitioner had crack cocaine. The Petitioner insisted that this discrepancy should have been brought out on cross-examination because he "want[ed] the jury to believe that the[ officers] were telling a story, a lie." He explained, "If you . . . swear under oath, which 'up under oath' mean[s] the truth -- if you said it was this drugs, powder, then you turn right back around under oath again and tell them a different drug, that's showing that you will lie. So now your credibility has gone down some." The Petitioner testified that trial counsel refused to ask the witnesses about the discrepancies in their testimony. The Petitioner also testified that trial counsel should have called Stacy Clark, the woman whose car he was driving when he was arrested on the instant offenses, as a witness to show that drug paraphernalia was found in her car. He explained,

> They told the jury that it wasn't no [sic] rolling paper, wasn't no -- anything to assume that drugs was in the car, wasn't no cigarette lighter, wasn't no papers or none of that in the car, and the only one that can answer that besides me was her because she know what she had in her car.

The Petitioner testified that he sent trial counsel subpoena forms for Clark but that trial counsel never called her as a witness.

Trial counsel testified that he had been practicing law, almost exclusively criminal defense, for ten years at the time of the Petitioner's trial and that he was a certified criminal trial specialist. He further testified that he had handled many drug cases previously but that the Petitioner's was his first drug case trial because those cases were typically settled by agreement. Trial counsel emphasized, however, that he did a lot of research for this case and

consulted others who had experience with drug trials. Trial counsel stated that the Petitioner's preliminary hearing transcript was only available on digital recording and that, after listening to the hearing, he made the decision not to request funding to have the hearing transcribed because he did not believe such was "necessary and reasonable[,]" as the rule required. He explained that his review of the hearing did not reveal any notable inconsistencies in the testimony from which to impeach the witnesses. Trial counsel further explained that he chose not to ask the officer about the powder versus crack testimony because the law made no distinction between crack and powder cocaine and because the impeachment would likely be ineffective, noting that jury studies had shown that impeaching a witness based on inconsistent testimony was the least effective means of cross-examination. He also explained that what was important to their defense was the Petitioner's intent, not whether the drug at issue was in powder or crack form, because their theory was that the Petitioner's possession of cocaine was solely for personal use.

Trial counsel stated that he did not recall any testimony about paraphernalia at the preliminary hearing but that if there had been such testimony, it was something he definitely would have wanted to ask about at trial. He explained that it would have been good to explore because it would have bolstered their defense theory that the drugs were for personal use. He admitted that, if such was presented, it was something he overlooked but insisted that he was still able to argue their theory of the case by highlighting law enforcement's lack of knowledge regarding possible destinations for the drugs and explaining that people often laced their marijuana cigarettes with cocaine. Trial counsel testified that he did not call Clark as a witness because she was a known drug dealer, facing her own charges, who was represented by counsel. Thus, he had been unable to talk to her and feared that her testimony could have been damaging. Trial counsel stated that he would not have done anything differently in his representation of the Petitioner.

In denying post-conviction relief, the post-conviction court credited trial counsel's testimony, finding that he reviewed the recorded preliminary hearing testimony and made a legal and tactical decision that there was no reason to transcribe the hearing; that trial counsel correctly noted that the law made no distinction between crack and powder cocaine; that, thus, "the variance in the affidavit and preliminary hearing testimony was insignificant as the substance was indeed cocaine"; and that trial counsel "vigorously cross-examined the State's witnesses during the course of the trial." Regarding the drug paraphernalia issue, the post-conviction court found that, according to Officer Chris Harris, "the officers found no pipes or other paraphernalia that would allow for the use of drugs." Concluding that the Petitioner failed to prove that any additional cross-examination of the State's witnesses would have made a difference at trial, the post-conviction court denied relief on that basis. Further, the post-conviction court stated that the Petitioner had failed to prove his allegation that trial counsel was ineffective for failing to call Clark as a witness because the Petitioner did not

present Clark as a witness at the evidentiary hearing, and it refused to speculate on what her testimony would have been. The post-conviction court concluded that the Petitioner had failed to establish that he was prejudiced by trial counsel's representation. This appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel at trial. First, he alleges that trial counsel failed to cross-examine the State's witnesses regarding trial testimony which was inconsistent with that given at the preliminary hearing, specifically noting that at trial, an officer testified that the drug found in the Petitioner's possession was crack cocaine and that at the preliminary hearing the same officer testified that the drug was powder cocaine. Second, the Petitioner alleges that trial counsel failed to question trial witnesses about whether drug paraphernalia was found at the scene to support his defense strategy that the drugs found in the Petitioner's possession were for personal use. We will address each in turn.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

## *Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697, 700. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The Petitioner first contends that he was denied the effective assistance of counsel because his trial counsel failed to properly cross-examine and impeach witnesses for testimony given at trial that was inconsistent with that given at the preliminary hearing. In its order denying relief, the post-conviction court credited trial counsel's testimony that he reviewed the preliminary hearing testimony and made a legal and tactical decision that there was no reason to transcribe the hearing. Trial counsel admitted that an officer had testified at the preliminary hearing that the Petitioner had been arrested for the possession of powder cocaine and that the officer later testified that it was crack cocaine at trial. However, trial counsel explained that he made the tactical decision not to impeach the officer on this discrepancy because the law made no distinction between crack and powder cocaine and because the impeachment would likely be ineffective. The post-conviction court also credited this testimony and found that "the variance in the affidavit and preliminary hearing testimony was insignificant as the substance was indeed cocaine." Because the preliminary hearing transcript was not included in the record on appeal, we must presume that the trial court's crediting trial counsel's testimony was proper. State v. Thompson, 131 S.W.3d 923, 927 (Tenn. Crim. App. 2003) (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)) ("Without a transcript of the hearing, we are required to presume that the trial court's determination of the issue was correct."). The post-conviction court further found that trial counsel "vigorously cross-examined the State's witnesses during the course of the trial." Given the foregoing and the Petitioner's failure to assert any other factual basis demonstrating that trial counsel's cross-examination of the witnesses was deficient, the Petitioner's claim that trial counsel failed to properly cross-examine witnesses regarding inconsistent testimony is without merit.

Turning to the Petitioner's second ineffective assistance of counsel contention, that trial counsel failed to question witnesses about the presence of drug paraphernalia in the car in which the Petitioner was arrested, we also conclude that this claim is meritless. Trial counsel testified that he was not certain whether he had questioned any witnesses regarding the presence of drug paraphernalia in the car when the Petitioner was arrested but that he did not recall doing so. However, the post-conviction court found that Officer Harris had in fact testified that no drug paraphernalia of any kind was found in the car, "allow[ing] for the [personal] use of drugs." Absent evidence to the contrary, we presume the correctness of the post-conviction court's finding. Thus, because the witness was questioned about the presence of drug paraphernalia and testified that none was present, even if we were to conclude that this omission in inquiry on trial counsel's part was deficient, the Petitioner has failed to demonstrate any prejudice. The Petitioner is, therefore, not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE